FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

11 AUG -5 AM 10: 05

OFFICE OF THE CLERK

8:11mc50

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 11-cv-01787-MSK-MJW

TATONKA CAPITAL CORPORATION,

    Plaintiff,

v.

TRILLION PARTNERS, INC.,

    Defendant.

I, the undersigned, Clerk of the United States District Court for the District of Colorado, do certify that the foregoing is a true copy of the original document remaining on file and record in my office.
WITNESS my hand and SEAL of said Court this 3 day of August 2011.
GREGORY C. LANGHAM
By_____
Deputy

## ORDER GRANTING MOTION TO APPOINT RECEIVER

**THIS MATTER** comes before the Court on Plaintiff Tatonka Capital Corporation's Motion to Appoint Receiver (#2), to which no response has been filed. Also pending before the Court is the Plaintiff's Motion for Expedited Hearing on the Motion to Appoint Receiver (#7), to which no response was filed. The Court held a non-evidentiary law and motion hearing July 27, 2011. Accordingly, the motion for expedited hearing (#7) is now **MOOT**.

The Plaintiff and Defendant Trillion Partners, Inc. represent that they have come to an agreement on both the appointment of a receiver, namely Mr. Bryon Smyl, and the terms of such appointment (#14, 16). Informal notice of this action, the motion for appointment of a receiver, the agreed upon terms, and the scheduled law and motion hearing on July 27, 2011 was provided to interested parties, including the shareholders of the Defendant. Two shareholders of the Defendant voiced their objections to certain terms of the parties' agreement to the parties themselves, but neither shareholder filed a formal objection in this Court nor appeared at the July

27, 2011 hearing. Moreover, at the hearing, the parties represented to the Court that the objecting shareholders do not have standing to contest the appointment of a receiver or the terms thereof.

Thus, given the parties agreement as to the terms of an appointment of a receiver and the fact that there are no objections from any party with standing, despite informal notice being provided to all interested parties, the Plaintiff's Motion to Appoint Receiver is **GRANTED**.

The terms for the appointment of receiver that the parties have agreed upon are as follows:

1. Byron Smyl (the "Receiver") is appointed by this Court as Receiver in order to protect, preserve and potentially enhance the value of Trillion and its assets for the benefit of all of Trillion's creditors and stakeholders and shall have, as provided herein, exclusive custody and control except as otherwise specified herein of all of Trillion's operations and assets and may deal with Trillion's liabilities. The Receiver is ordered to take immediate custody, possession and control of all of Trillion's operations and assets (the "Trillion's Assets").

2. Trillion and those acting in concert with it are hereby ordered and directed to comply in all respects with this Order, and are hereby enjoined and restrained from impeding or interfering in any manner with the exercise by the Receiver of its rights, powers and duties hereunder. From and after the date of this Order, Trillion shall not enter into any lease, contract or agreement of any kind or character relating to its business or Trillion's Assets, and shall not grant any lien upon or security interest in Trillion's Assets, except through the Receiver.

3. Absent prior approval of this Court, no creditor of Trillion, or other person or entity, shall seek, create or perfect a lien or security interest in Trillion's Assets, or levy or execute on

Trillion's Assets, except as otherwise provided in this Order. Nothing in this Order diminishes any party in interest's right to send formal or informal notice on Trillion provided a copy of same is also sent contemporaneously to Receiver.

4. Trillion is hereby ordered and directed to deliver, or make available to the Receiver unrestricted physical custody, control and possession of Trillion's Assets and operations, books and records related to Trillion and Trillion's Assets, including but not limited to all property of any and all types in which Trillion has any interest, all accounts receivable reports, customer agreements and reports, rents, revenues and proceeds of Trillion's Assets, all claims for payment, all surety bonds, letters of credit, security deposits, tax deposits, performance deposits, escrow deposits, keys, books, records, bank accounts, checkbooks, ledgers, accounts payable and accounts receivable records, websites, leases, reports, insurance policies and certificates, executory contracts, plans, specifications, drawings, surveys, technical manuals, operating procedures, warranties, records required to be kept under applicable safety and environmental laws, bids, awarded contracts, licenses, permits, proffers, entitlements, trademarks, service marks, trade names, intellectual property rights, claims, causes of action, choses in action, its claims relating to USAC and the E-Rate program, equipment, interests in real property and in general all other instruments, documents, rights, properties or assets of any kind or character whatsoever (whether tangible or intangible and whether real, personal or mixed) forming a part of or related to the ownership, development, use, operation and management of Trillion's Assets (collectively, together with all receivables, revenues or proceeds received by the Receiver from or by virtue of Trillion's Assets, the "Receivership Assets");

5. Within five business (5) days following the entry of this Order, Trillion shall deliver,

3

or make available to the Receiver (i) a list of all creditors of Trillion, including to the extent known the names, addresses, telephone numbers and e-mail addresses of such creditors, and the amounts due to each such creditor; (ii) a list and description of all claims and causes of action that Trillion has against any person in connection with the Receivership Assets, including to the extent known the names, addresses, telephone numbers and e-mail addresses of such persons, and the amounts due or alleged to be due from each such person; and (iii) a list and description of each location where any equipment or assets of Trillion (or which it has any use or conducts any operations) is located, including what assets are present at that location. Trillion shall supplement such lists promptly to the extent information becomes known regarding additional claims or debts of Trillion. Receiver shall comply with the requirements of 28 U.S.C. § 754 concerning Receivership Assets located in other jurisdictions but the ten day requirement is hereby extended to 30 days to give the Receiver time to gather the information necessary to make these multiple filings.

6. Trillion shall cause, and Receiver shall be authorized on Trillion' behalf to cause, the Receiver and its agents to be named as an additional insured on any insurance policies covering the Receivership Assets. Receiver may, in its discretion, obtain insurance covering the Receivership Assets, and such insurance expense shall be deemed a normal, ordinary, and necessary operating expense of the Receivership Assets.

7. Receiver shall be entitled to the full use and benefit of any surety bonds, letters of credit, cash deposits or similar existing arrangements securing any obligation owing by Trillion to any third party in connection with the Receivership Assets.

8. All tenants, bailees or other persons in possession of the Receivership Assets or any portion thereof are hereby directed to attorn to Receiver, and until further order of this Court (i) are

hereby directed to pay over to Receiver or its duly designated agent all rents, revenues, proceeds or other sums payable with respect to the Receivership Assets which are now due and unpaid or hereafter become due, and (ii) are hereby enjoined and restrained from paying to Trillion or its agents, officers, directors, employees, or attorneys any such rents, revenues, proceeds or other sums;

9. Trillion is hereby enjoined and restrained from collecting any receivables, rents, revenues, proceeds or other sums payable with respect to the Receivership Assets, except through the Receiver. Should Trillion come into possession of any such receivables, rents, revenues, proceeds or other sums subsequent to the date of entry of this Order, Trillion is hereby ordered and directed promptly to remit the same to Receiver in the form received;

10. Receiver shall be empowered to take all such actions and exercise all such discretion and authority as may be necessary or desirable in connection with the ongoing operation, maintenance, management, protection and preservation of the Receivership Assets. Without limiting any of the general or specific powers granted herein, Receiver is hereby vested with all of the powers, rights and duties provided to receivers under applicable law. For the avoidance of doubt, the Receiver's power to take action without the need for a further order of the Court includes, without limitation, the power and authority to (a) enter upon and take possession and control of any and all of the Receivership Assets; (b) take and maintain possession of all documents, books, records, papers and accounts relating to the Receivership Assets; (c) hire and fire employees and exclude Trillion and its agents, servants and employees wholly from the Receivership Assets; (d) manage and operate the Receivership Assets and the business of Trillion; (e) borrow monies on an unsecured basis for expenses incurred in the normal, ordinary, and necessary operating expenses of the Receivership Assets; (f) preserve and maintain the Receivership Assets including making repairs

and alterations to the Receivership Assets; (g) undertake any construction or repair of the Receivership Assets, with such changes, additions or modifications of the Receivership Assets as Receiver may in its sole discretion deem appropriate or desirable; (h) acquire funding on an unsecured basis to build out the infrastructure and any other development in order to place into operation any contract or opportunity that Trillion has been awarded; (i) employ such contractors, subcontractors, materialmen, architects, engineers, consultants, managers, brokers, marketing agents, or other employees, agents, independent contractors or professionals, as Receiver may deem appropriate or desirable to implement and effectuate the rights and powers herein granted; (j) execute and deliver, in the name of Trillion or in Receiver's own name, such documents and instruments as are necessary or appropriate to consummate authorized transactions; (k) enter into such leases, whether of real or personal property, or tenancy agreements, under such terms and conditions as Receiver, in its discretion, but subject to the consent of Tatonka, may deem appropriate or desirable; (l) file legal proceedings or make such claims (including in the name of Trillion) to enforce any of Trillion's rights; (m) oversee maintenance and management of the Receivership Assets; (n) communicate and share information with prospective purchasers; (o) deal with other issues with vendors, municipalities, school districts, and other governmental entities, as necessary; (p) pursue the sale of all or any portion of the Receivership Assets in the ordinary course of business; (q) engage Advisors, as appropriate, in order to advise and assist Receiver in carrying out its duties and appearing in court or other proceedings on its behalf; and (r) take all such further actions for the benefit of Trillion's creditors and stakeholders and enter into all such other agreements as Receiver in its professional discretion deems appropriate or desirable to preserve, protect and maximize the value of the Receivership Assets.

11. Without further order of Court, Receiver is authorized to employ and pay such contractors, property managers, brokers, accountants, advisors, attorneys and other persons and professionals ("Advisors") as Receiver may deem necessary or appropriate to the performance of its duties hereunder, and such expense shall be deemed a normal, ordinary, and necessary operating expense of the Receivership Assets. For the avoidance of doubt, subject to paragraph 17 below, Receiver is authorized to engage and pay Alvarez & Marsal North America, LLC and/or its affiliates ("A&M") to the extent Receiver deems such services necessary to assist in the matters applicable to the Receiver's duties hereunder notwithstanding that Receiver is a Managing Director with A&M. Receiver shall endeavor to utilize the existing professional services currently used by Trillion where such services are provided on a quality basis if existing services would achieve greater cost savings to Trillion.

12. Without further order of Court, Receiver shall pay, from the Receivership Assets, all such costs and expenses as shall be incurred by Receiver in the ordinary course of business in connection with the operation, maintenance, management, protection and preservation of the Receivership Assets, including without limitation, reasonable expenses required to put the Receivership Assets in a rentable and/or saleable market-ready condition or otherwise necessary to realize the value thereof. Neither Receiver nor Tatonka shall be liable for any expenses incurred with regard to the Receivership Assets prior to Receiver taking possession of the Receivership Assets, nor shall Receiver nor Tatonka be required to use the Receivership Assets for payment of any expenses incurred with regard to the Receivership Assets prior to the date of this Order. Notwithstanding the foregoing, Receiver may, in Receiver's sole and absolute discretion, pay those expenses which were incurred in the normal and ordinary course of business of the Receivership

Assets prior to Receiver taking possession of the Receivership Assets if, and only if, Receiver determines that payment of any such pre-existing expense is necessary and critical to the ongoing operation, maintenance, management, protection and preservation of the Receivership Assets, or to pay secured debts, to the extent necessary to preserve assets needed for the estate. Otherwise, no pre-existing expenses shall be paid by Receiver. Receiver shall not be required to perform under any contract or lease entered into prior to the date on which he assumes possession of the Receivership Assets;

13. Without the further order of Court, in the event that the revenues and proceeds of the Receivership Assets shall at any time be insufficient to pay the Receiver's fees and expenses hereunder, Receiver is hereby authorized to borrow from Tatonka or other sources such funds as may be necessary to pay such costs and expenses (the "Receivership Loan"). The Receivership Loan shall constitute a demand obligation, shall bear interest at market rate, and shall give rise to a fully perfected first priority priming lien upon the Receivership Assets in favor of the lender, and such other commercially reasonable terms as may be agreed. No personal recourse shall be had against Receiver with respect to the Receivership Loan, and the lender shall look solely to the Receivership Assets to satisfy the Receivership Loan.

14. The Receiver may at the appropriate time (i) to seek buyers or investors for the assets of Trillion; (ii) to negotiate contracts with management, including but not limited to incentive or stay bonuses for Trillion's key personnel; and/or (iii) acquire financing secured by a senior and paramount lien upon any or all the Receivership Assets in order to build out the infrastructure and any other development in order to place into operation any contract or opportunity that Trillion has been awarded or for any other reason. However, each of the Receiver's powers in this paragraph can

be implemented only after notice to all parties in the case and all parties holding a lien on any of Trillion's Assets, followed by a subsequent order of Court approving the Receiver's proposed action.

15. On or before the 20th day of each month, Receiver shall make an accounting of all revenues collected and all fees and expenses paid for the previous month and shall file said accounting with the Court and shall serve upon Tatonka, Trillion, and any other party appearing in this case. Such accounting shall list separately all fees and expenses paid to each Advisor. Any party may object to such fees and expenses. After notice and a hearing the Court may disallow or order returned the fees and expenses of any Advisor. Receiver shall file a final report within forty-five (45) days after the termination of the receivership.

16. Receiver shall take reasonable actions to ensure that it complies with all laws applicable to the possession, use, occupancy, management, operation and maintenance of the Receivership Assets as provided under any laws of the United States, the State of Colorado, and otherwise;

17. Receiver's compensation shall be as follows: Receiver shall be paid by the hour at the rate of $595.00. Hourly rates for A&M personnel engaged by the Receiver shall not exceed this rate. The Receiver's use of any personnel of A&M (other than himself) that are paid on an hourly basis shall be subject to the prior approval of Tatonka only. If Tatonka does not agree, the Receiver may seek approval from the Court to use such additional person(s). However, for the first three months of the engagement, Receiver shall charge a fixed monthly rate of $70,000 per month for his services. The fees for the first three months may be paid without the need for further court approval. Beginning in the fourth month, the Receiver, with the approval of Tatonka, will have the option to continue with the fixed monthly rate or convert to an hourly rate of $595 per hour. In addition to

the fixed monthly or hourly rate for the Receiver, Receiver will be eligible for additional milestone payments of (1) $50,000 to stabilize the Company; (2) $150,000 upon final resolution of the disputed accounts receivable with the Universal Service Administration Company ('USAC") in a manner that obtains fair value for the accounts receivable; and (3) $200,000 upon the successful implementation of a strategic alternative which obtains fair value for the Assets by a (a) sale of the company; (b) refinancing/recapitalization of the company; and/or (c) restructuring of the existing credit facility. In the alternative to (3) above, Receiver is eligible to receive $250,000 if the sales price provides substantial compensation to equity interests. In addition, Receiver shall be reimbursed for all out-of-pocket expenses reasonably incurred in the discharge of its rights and obligations hereunder. Such fees and expenses shall be payable monthly without the requirement of a further order of this Court, provided, however, that Receiver's fees and expenses shall be disclosed in the monthly accounting described below and may be reviewed by the Court upon objection by any party.

18. The Receiver may, in its sole and absolute discretion, resign its position as Receiver by providing not less than thirty (30) days written notice by regular, first class mail to Tatonka (and its counsel) and Trillion, and by filing such notice with this Court. The Receiver shall not be required to obtain the approval of this Court prior to resigning as Receiver hereunder. The receivership will be considered no longer needed when (a) all of the outstanding defaults have been cured; (b) a sale of substantially all of Trillion's Assets is consummated; or (c) Trillion's indebtedness is restructured in a manner acceptable to creditors and stakeholders. In any of the forgoing circumstances this Court may remove the Receiver upon motion by any party or, for additional good cause therefor, after reasonable notice and opportunity for hearing thereon.

19. The liability of the Receiver and its Advisors, agents, representatives, employees, affiliates, successors and assigns ("Exculpation Parties"), for any and all claims, liabilities, damages, fees, costs, expense and charges incurred or arising from their respective acts or omissions in connection with Trillion, this Order, the receivership established pursuant to this Order, and/or the Receivership Assets ("Related Matters"), shall exist only to the extent that this Court determines by a final and non-appealable judgment that such acts or omissions resulted solely from such person's bad faith or gross negligence. Any such liability shall be paid as an expense of the receivership when and as incurred. The Receiver shall be fully protected by the Receivership Assets from, any action taken or suffered or omitted by the Receiver in reliance upon the advice of its Advisors, except for in the case of willful misconduct, gross negligence or fraud of the Receiver as determined by a final order of this court. Notwithstanding the foregoing, the Receiver shall be under no obligation to consult with its Advisors and its good faith determination not to do so shall not result in the imposition of liability on the Receiver, unless such determination arises from the Receiver's willful misconduct, gross negligence, or fraud. Persons dealing with the Receiver shall look only to the Receiver Assets to satisfy any liability incurred by the Receiver to any such person in carrying out the terms of this Order, and the Receiver (and any affiliated entities or persons, including, without limitation, A&M) shall have no personal or individual obligation to satisfy any such liability, subject to the limitations in this Order. Receiver shall be entitled to obtain such insurance coverage as it may deem reasonable to protect itself and the Exculpation Parties against claims and liability which are covered, or not covered, by the foregoing exculpation, and any premiums or fees for such insurance shall be paid from the Receivership Assets and constitute a fee or expense of the receivership. This paragraph 19 shall survive the termination or resignation of Receiver, and the

termination or suspension of the receivership;

20. In the event that, at any time whether before or after termination or resignation of the Receiver of this receivership, as a result of or in connection with the Related Matters, any Exculpation Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or the Receiver or any other Exculpation Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Exculpation Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Exculpation Party will be reimbursed from the Receivership Assets for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will be compensated from the Receivership Assets for the time expended by its personnel based on such personnel's then current hourly rate.

21. All fees and expenses of Receiver (including without limitation the indemnification provisions set forth above) shall constitute a first lien and charge against the Receivership Assets, with priority ahead of all other liens and security interests, including without limitation the liens and security interests of all other persons and entities.

22. No provision of this Order shall require the Receiver to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties as Receiver hereunder, or in the exercise of any of its rights or powers, if the Receiver shall have reasonable grounds for believing that repayment of funds or adequate indemnity or security satisfactory to it against such risk or liability is not reasonably assured to it.

23. Any party shall be entitled to cause a copy of this Order to be filed and recorded in the any governmental office any party deems necessary or appropriate.

24. The Court shall retain jurisdiction and supervision of all matters concerning Receiver, the receivership created hereby, and the Receivership Assets. Any and all actions which affect Receiver or the Receivership Assets shall be brought in this Court, and any attempt to collect from any Receivership Assets must be brought in this Court. Any judgment entered against the Receiver shall not be valid unless approved by this Court. Receiver may seek instructions and additional authority from this Court upon written notice to the parties appearing in this action;

25. Nothing herein shall limit or prevent any party in interest from exercising any further right or remedy for any of the obligations included in the original Complaint filed in this case.

**IT IS THEREFORE ORDERED** that

(1) Plaintiff Tatonka Capital Corporation's Motion for Expedited Hearing on the Motion to Appoint Receiver (#7) is **DENIED AS MOOT**.

(2) Plaintiff Tatonka Capital Corporation's Motion to Appoint Receiver (#2) is **GRANTED** based on the agreement of the parties.

Dated this 27th day of July, 2011

BY THE COURT:

*Marcia S. Krieger*

Marcia S. Krieger
United States District Judge